UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10179-GAO

UNITED STATES OF AMERICA, ex rel.
CHRISTOPHER DRENNEN,
Relator,

v.

FRESENIUS MEDICAL CARE HOLDINGS, INC.,
d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA,
Defendant.

OPINION AND ORDER
March 30, 2018

O'TOOLE, D.J.

The relator, Christopher Drennen, filed an original complaint under seal in February 2009, asserting violations by the defendant of the False Claims Act, 31 U.S.C. § 3729, *et seq*. The complaint alleged that Fresenius had billed the federal government for tests that were not reasonable or medically necessary under applicable guidelines. The government moved three times to extend the time within which it could decide whether to elect to intervene in the case as a plaintiff, and the three extensions were granted. However, in granting the third extension, the Court noted that there would be "[n]o further continuances." (Order Granting United States' Mot. for Ext. of Time to Intervn. (dkt. no. 19).) Nevertheless, a few months later the government asked for a further extension of time to decide whether to elect to intervene, which the Court denied. The complaint was unsealed in February of 2011, and later amended the following July.

On October 2, 2015, more than six and a half years after the relator filed his original complaint and one year after the completion of fact discovery, the government moved to "partially" intervene in "both counts" of the relator's first amended complaint "to the extent that relator alleges

that, between February 10, 2003, and December 31, 2010, defendant Fresenius filed false claims with Medicare for medically unnecessary hepatitis B surface antigen (BsAG) tests." (United States' Mot. for Leave to Part. Intervn. 1 (dkt. no. 178).). On March 31, 2017, the Court granted the government's motion, allowing it to intervene, but added that the government would not be afforded an opportunity for additional discovery. Two weeks later, the government filed its complaint in intervention, which purported to add new claims to the realtor's complaint. The newly proposed complaint is the subject of Fresenius' motion to strike or dismiss.

The magistrate judge to whom this case was referred has issued a Report and Recommendation ("R&R") (dkt. no. 269) recommending that the defendant's Motion to Strike or Dismiss Portions of the United States' Complaint in Intervention (dkt. no. 214) be denied. Pending before the Court are Fresenius' objections to that R&R.

Fresenius first objects to the R&R's recommendation that the government's newly asserted claims be permitted to survive because they were not expressly precluded by any prior order of this Court.[1] Fresenius argues that, as a late intervenor the government may not unilaterally widen the scope of the litigation at this late stage, but must take the case as it stands.

The False Claims Act contemplates government intervention in two circumstances: the government "may elect" to intervene while the relator's complaint is yet under seal, see 31 U.S.C. § 3730(b), *et seq.*, and a court "may . . . permit" the government to intervene at a later date despite not having previously made a timely election, see id. § 3730(c)(3).[2] The statutory language is plain. The former section provides for government intervention as of right at its sole option ("may elect"),

---

[1] The government's new common law claims for payment by mistake, unjust enrichment, and conversion appear in the government's complaint in intervention as counts four, five, and six, respectively. (United States' Compl. 4–5 (dkt. no. 210).)
[2] All statutory citations included herein refer to Title 31 of the United State Code.

2

while later intervention after the case has been unsealed requires the court's permission and a showing of "good cause." See § 3730(c)(3).

Both sections address "intervention," which is a legal term of art in the context of civil litigation. As such, it invites reference to Rule 24 of the Federal Rules of Civil Procedure and the body of case law that accompanies it. See Rockwell Int'l Corp. v. United States, 549 U.S. 457, 478 (2007) (referencing general intervention principles in considering intervention under the False Claims Act); United States ex rel. Precision Co. v. Koch Indus., Inc., 31 F.3d 1015, 1017 (10th Cir. 1994) (using Rule 24 to guide analysis of intervention under the False Claims Act); see also United States ex rel. Hall v. Schwartzman, 887 F. Supp. 60, 62 (E.D.N.Y. 1995) (looking to Rule 24 in qui tam case).

Rule 24 authorizes both intervention of right, when a court "must permit" a party to intervene in an existing civil action, Fed. R. Civ. P. 24(a), and permissive intervention, when a court "may permit" it under certain circumstances, including when the proposed intervenor "is given a conditional right to intervene by a federal statute." Fed. R. Civ. P. 24(b)(1)(A). The False Claims Act is similar. Under § 3730(b)(2), the government has a right, at its election and without the need for judicial permission, to intervene while the complaint filed by the relator remains under seal. Under § 3730(c)(3), after the government has originally elected not to intervene, the court "may nevertheless permit [it] to intervene at a later date upon a showing of good cause." Intervention under this provision is not of right, but literally permissive. Because of the similarity of the authorities, it is appropriate in considering intervention under § 3730 to take account of relevant guidance from cases decided under Rule 24.

Under Rule 24, it is clear that in cases of both permissive intervention and intervention of right "courts have broad authority to limit the ability of the parties to expand the scope of a

3

proceeding beyond the issues litigated by the original parties." Johnson v. Bd. of Regents, 263 F.3d 1234, 1269 (11th Cir. 2001) (citations omitted). This holds true even when a party intervenes of right. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party.") (citing Advisory Committee Notes on Fed. R. Civ. P. 24(a)); Beauregard, Inc. v. Sword Servs., LLC, 107 F.3d 351, 352–53 (5th Cir. 1997) ("[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."); Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 122 (4th Cir. 1981) ("Even intervention of right may properly be made conditional by the exigencies of the particular case."); Shore v. Parklane Hosiery Co., 606 F.2d 354, 356–57 (2d Cir. 1979) (noting that the 1966 amendment to Rule 24(a) allowing restrictions on intervention as of right "was not an innovative suggestion but was instead the recognition of a well-established practice"). Stated differently, courts recognize a presumption of sorts that intervenors take the case as it stands unless permitted otherwise.

The objection by Fresenius correctly notes that the R&R did not recognize such a presumption. The R&R's finding that there was "nothing in the District Judge's decision to indicate that he intended to limit the Government's authority [to bring additional claims]" may or may not be an accurate observation, but it proposes the wrong standard. (R&R 6.) The question is not whether this court expressly precluded expanded claims, but rather whether permission to add those claims was either requested or given. Indeed, the magistrate judge found it to be "undisputed that the addition of common law claims was never discussed by any party in connection with the Government's request to intervene." (Id. at 5.) The government's motion to intervene was rather, in its own characterization, a motion to "partially intervene" in "both counts" of the relator's

4

complaint. (United States' Mot. for Leave to Part. Intervn. 1.) There was no suggestion that the government was seeking permission to add new claims. The plain language of the motion referred to the existing counts in the relator's amended complaint only.

The government sought to justify its late intervention by emphasizing the existence of "new and significant evidence" showing "fraud on the government." (Id. at 21: 13–15.) It explained to the Court: "We're not trying to play hide the ball . . . that's not our goal here. Our goal is to be given a chance to prove this fraudulent scheme." (Tr. of Mot. to Intervn. Hr'g 47: 8–13 (dkt. no. 204).) Reference to "this fraudulent scheme" is fairly understood as a reference to the allegations of the existing complaint. Its current argument to the contrary—that it "pleaded common law claims within the scope of this Court's leave for the Government to intervene," (United States' Opp'n to Def.'s Obj. to R&R 5 (dkt. no. 273).)—is simply untenable, as leave could not have been granted for claims that were never discussed.

The government, however, avoids discussing whether these claims were permitted by the Court. Perhaps this is because the R&R concluded that § 3731(c) entitles the government to add additional claims under § 3731(c) without specific permission regardless of whether its intervention is elective, see § 3730(b)(2)–(4), or permissive, see § 3730(c)(3). The principal problem with that proposition is that it divorces the request for permission from what is sought to be permitted. It would allow the government to get permission for a kind of placeholder pleading, with the actual pleading to be revealed later. How that approach could jibe with the requirement to show "good cause" is hard to conceive.

When the government elects to intervene under § 3730(b), it does so while the complaint is yet under seal. See § 3730(b)(2)–(4). Intervention under this section thus entitles the government to the authority of § 3731(c)(1)-(2), giving it an "editor's privilege" that allows it to revise the

complaint freely before its existence has ever been disclosed to the defendant. This editor's privilege, however, is lost if the government does not intervene before the complaint is unsealed. This is evident from the prefatory phrase of § 3731(c) explicitly conditioning its application to instances when "the Government *elects* to intervene and proceed with an action brought under § 3730(b)." (emphasis added).

It is a different matter when a court *permits* the government to intervene under § 3730(c)(3).[3] In that circumstance the government is getting on a moving train. The claims in the case are already defined, and as here, extensive discovery related to *those claims* has taken place. When this Court granted the government's motion to intervene, a motion that was vigorously contested, the Court also ruled that the government would not be allowed further discovery. (General discovery had been closed for more than a year.) How the government could have understood the no-discovery ruling as consistent with its ability to add to the case whatever new claims it wanted is puzzling.

The permission granted the government last year to intervene was permission to intervene in the case as it is. The government will get its chance to prove fraud. It takes control of the relator's claims as they pertain to excessive BsAG testing in violation of the False Claims Act. But that is all. The common law claims were available to the government from the outset of this litigation and their addition at this late stage of the case would cause undue prejudice to the defendant, whose

---

[3] The government's argument that it always *elects* to intervene, even when its election is conditioned on the court's permission, is neither reasonable nor persuasive. See Kelly v. United States, 924 F.2d 355, 361 (1st Cir. 1991) ("'It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.'") (citation omitted). Once the complaint is unsealed and intervention under § 3730(c)(3) is required, the permissible scope of government intervention is determined not by § 3731(c), but by the court on a showing of good cause.

theory of defense has long-since focused on rebutting the scienter element of fraud. The presumption that an intervenor takes the case as it stands, unless otherwise permitted by the court, is applicable to the government's late intervention here. Because the government's common law claims were never permitted by this Court, they are dismissed, and I decline to adopt the R&R to the extent it recommends otherwise.

As a separate matter, Fresenius objects to the magistrate judge's recommendation that the government be permitted to assert False Claims Act violations beyond 2006, the latest allegation in the relator's existing form of complaint. Fresenius argues that the relator's assertions that he "believe[d] and allege[d] that such violations are ongoing," (Am. Compl. ¶ 41 (dkt. no. 42).), fail to satisfy the heightened requirement of Rule 9(b), which is applicable to alleged violations of the False Claims Act, see Fed. R. Civ. P. 9(b); United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 228 (1st Cir. 2004). The relator's initial failure to meet this pleading requirement with respect to fraud occurring after 2006, Fresenius argues, now prevents the government's expanded claims of fraud from relating back to the relator's complaint under § 3731(c). Both the R&R and the government, on the other hand, argue that an ongoing fraud was adequately pled such that these allegations do relate back to the relator's complaint.

Relation back generally applies when a party amends its complaint in order to seek liability at an earlier point in time or against a newly added party. See Fed. R. Civ. P. 15. This retroactive assertion of claims creates issues of notice, such as whether the amending party adequately pled facts in the first instance that now support the additional backwards-reaching claims. See United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 270 (2d Cir. 2006) (describing notice as "the touchstone for relation back"); In re Pharm. Indus. Average Wholesale Price Litig., 498 F. Supp. 2d 389, 398 (D. Mass. 2007).

The government's expanded claims here, however, reach forward, not backward. Consequently, they do not present the issues of notice that relation back doctrine was intended to address. In fact, Fresenius conceded that it has already conducted discovery on these allegations through 2010. This confirms that notice is not a problem here. Although Fresenius may have been able to contest the adequacy of the relator's pleading earlier in the litigation, that time has passed, and the allegations of conduct beyond 2006 are now an evidentiary issue to be determined at trial. Because relation back is not applicable to the government's expanded False Claims Act allegations, I agree that the government is permitted to assert them through December 31, 2010.

For the foregoing reasons, I DO NOT ADOPT the recommendation that Fresenius's motion to strike the proposed new claims asserted by the government be denied. Rather, that motion is GRANTED to the extent that the claims sought to be added are stricken. I DO ADOPT the recommendation that so much of Fresenius' motion as seeks to bar the government or the relator from presenting evidence pertaining to events between 2006 and the end of 2010 be DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge